Case number 19-6226 Edward Kendrick III v. Mike Parris oral argument is not to exceed 15 minutes per side. Ms. Rao Beery for the appellant. You may proceed. Good morning and may it please the court. Amanda Rao Beery on behalf of Petitioner Edward Kendrick. I reserve three minutes for rebuttal. Okay. Edward Kendrick had one defense in his first degree murder trial. He had to show the jury that his Remington rifle accidentally discharged just as it did hours later when it misfired into the foot of a veteran police officer. At trial, the state had an expert witness who told the jury that there was no way Kendrick's gun could have fired without pulling the trigger. But because Kendrick's counsel never sought an expert on this technical issue at the core of the case, the jury never heard evidence that in fact his rifle contained a defective trigger mechanism that made it prone to misfiring. That was deficient performance and Kendrick received constitutionally ineffective assistance of counsel. The state court unreasonably applied Supreme Court precedent when it held otherwise. We therefore ask this court to grant a writ of habeas corpus. The Supreme Court in Harrington v. Richter and in Hinton v. Alabama held that there are cases where the only reasonable and available defense strategy is to consult with an expert. Like Hinton, this too is such a case. Can I ask it just briefly? It seems to me that in some respects the duties of counsel under the ineffective assistance of counsel have evolved over time and that maybe there's kind of, as we recognize the more importance of experts, the need for experts has grown. Whereas this trial took place in 1994. I think Hinton, I forget, it was like 2000, late 2011, 12 or somewhere around there. 2014. Do you concede or do we have to look at ineffective assistance in terms of the duties that would a reasonable counsel would have thought were required in 1990s when the kind of the right to expert testimony was still evolving? Or do you think it's just an objective that it was always this duty that existed and would it existed even like in the 80s and the 70s and the 60s? Well, your honor, the Supreme Court precedent that determines whether or not counsel was ineffective under the Sixth Amendment is the Supreme Court precedent that was in effect at the time the state court rendered its decision, which in this case was before Hinton. And, you know, I would note that in Hinton, I don't remember the exact date, but I believe the trial had been sometime in the 80s. So, you know, while it may be true that expert evidence has become increasingly more important, the Supreme Court has been clear that counsel's duties under the Sixth Amendment, and in this case, you know, when the duty requires counsel to get an expert witness do apply even to those earlier cases. So, you know, just like in Hinton, where expert test, expert evidence from the state was that featured prominently in the case was part of the core of the case. This too is is like that situation, Hinton. This was a one defense case. Kendrick had to show that his rifle. Counsel, why was it unreasonable? Given what counsel knew at the time, so counsel at the time, expected that Officer Miller would testify consistently with his prior statements, right, his statements to the other officers and his statements to the investigator. So given that, why was it unreasonable for him to fail to seek an expert? The only reasonable strategy he had here was to hire an expert. I mean, this was a case about accidental discharge. He had to show the jury that Kendrick's gun had gone off without pulling the trigger. You know, guns are not supposed to do that. They're carefully designed, in fact, not to go off without a trigger. But if he had testimony from a police, he believed he was going to get testimony from a police officer that said, this gun is capable of firing without pulling the trigger, because in fact, it happened to me, the officer. Why does he need an expert to say the gun is capable of doing that? When in fact, he would have very credible testimony that in fact, it did that. Officer Miller's testimony, which of course, counsel didn't end up getting substantive evidence that he didn't trigger in. But, you know, that was, of course, you know, that's an extraordinary event and is a critical piece of evidence. But that still doesn't obviate the need for counsel to seek expert testimony, particularly in light of the fact that the state had an expert who testified that it was mechanically impossible for the gun to go off without pulling the trigger. I mean, I guess I'm wondering, just because the state has an expert that says this is impossible, if you have a fact witness that says, what a fact witness employed by the state as a police officer, who is willing to say, well, it's, it must be possible because it happened to me. Why is it constitutionally ineffective? Why isn't that sufficient testimony? In other words, if that testimony had been admitted, would you still be claiming that it was ineffective because there was no expert? Absolutely, Your Honor. I mean, this is under Hinton, this is one of those cases where the only reasonable and available defense strategy was to employ an expert witness. The, this was an inescapably technical question, even when placed alongside Officer Miller's incident and what counsel assumed that his testimony would be at trial. You know, he needed to have expert testimony who could, that an expert that could explain to the jury, this gun can go off accidentally. In fact, it has a long history of discharging without pulling the trigger. That was a critical part of establishing Kendrick's only defense at trial. And then you add in the fact that the state had an expert that said it basically, you know, cut that accidental discharge defense off right at the knees by saying, there's no way this can happen unless you pull the trigger. So this is the kind of case where, where counsel had to get an expert where that was his only reasonable and available strategy. So counsel, I think Judge Guy wants to ask you a question, but he's on mute. Judge, Judge. Judge Guy. You're on mute, sir. Well, you've got me on mute. I unmute. Oh, you. Do it again. You just remuted yourself. Press the button again. There you go. Can you hear me now? Yeah. Yes. And okay. To follow up on that, the the law is such that if an attorney pursues an alternate strategy, it doesn't have to just has to be a reasonable strategy. And I would suggest that this strategy here was eminently reasonable because one thing with experts, one says black and the other says white. But if you can get from a lay witness, if you can get an admission that's damaging, and I would say that the officer, the first time this gun was handled after he handled it, that it went off and he shot himself, it's almost a Perry Mason moment. I think that was, I think the strategy was eminently reasonable. Plus the fact that I don't know, the judge talked a lot about, you know, could they have even gotten an expert? Was there enough money to pay for the expert? All those kinds of things. And I don't, to me, those necessarily were sort of not compelling reasons, but I think you got a tough hurdle to get over to say that this wasn't a reasonable strategy. Respectfully, Your Honor, we disagree. This, you know, again, whether or not this gun could have fired accidentally is the kind of thing that's the province of an expert. You know, guns are machines. They're carefully designed. You have, you know, if you have an expert who is able to explain to the jury, look, this gun has a defect. It's capable of misfiring. It has done so in the past. That turns this into an entirely different case. And to the state court's observation that it was entirely uncertain that Kendrick would have been able to get an expert in 1994, the record clearly contradicts that suggestion that the state court made. Belk had known, Belk, the expert who testified at the post-conviction hearing, he had known about the issue since the 1970s. He had testified about this trigger mechanism in 1994 before Kendrick's November trial. He explained that counsel likely would have found him if he had done some research. In other words, counsel, there wasn't Google back then. So how is he supposed to find this expert that testified in one case, I think, which he said was in Arkansas. We couldn't find anything about that case, despite our efforts to track that down. Even though we have Google and Westlaw and Lexus and all that stuff. I mean, there was Westlaw and Lexus in 94, but not the, not Google. So how, and the state court made a finding of fact that he probably couldn't have found the expert. So what's your evidence to contradict that? Because it's your burden now, right? Yes, Your Honor. I mean, so the evidence in the record, again, I mean, Belk was out there. The evidence clearly says Belk was out there. He was testifying in cases. So, you know, there were there were lawyers, there were cases. One case in the same year as the trial, right? That's what it says. Yes. And he'd also known about the issue for decades. And, you know, there were cases he knows about and what another lawyer might be able to find out about are different questions, right? The fact that he knows in his head that this issue exists, it doesn't tell me that the lawyer should have known. And the only evidence in the record says that, you know, that Belk knew about it. He had testified, he was being hired in 1994 to testify in these kinds of cases. You know, there are two products liability cases that, you know, one went to the Texas Supreme Court. There's one in the Eighth Circuit. This, the evidence in the record from Belk's testimony shows that this wasn't a niche issue. And the main basis for the state court's sort of contrary speculation was simply the fact that trial counsel himself had said he was familiar with firearms and he didn't know about the Remington issue. But his familiarity, the extent of his familiarity was simply that he owned guns and he himself admitted that he knew just a little bit about guns. So for the state court to say that it was unlikely he would have found Belk based on the fact that trial counsel owned a gun and he hadn't heard about it is just, is clearly wrong. And the evidence in the record from Belk says if counsel had done some research in 1994, he likely would have found him. Counsel, I know you're just about out of time, but I want to ask you one question on the, we'll call it the excited utterance issue. You've kind of cast this as a failure to investigate claim. In other words, your argument is that Mr. Kendrick's lawyer, who I believe was Hill or Hall, Mr. Hall or Mr. Hill, either way, Kendrick's lawyer, should have personally interviewed Officer Miller rather than sending his investigator to do that. But you've never explained why that would have made a difference. Why do you think it would have made a difference if Miller had done the investigation personally rather than relying on somebody on his staff? I'm sorry, if Hill had done the investigation personally. First, Your Honor, the evidence in the record is by no means clear that anybody spoke to Miller. Counsel testified at the post-conviction hearing that he thought that counsel had spoken with him, that he was somehow aware of Miller's earlier statements. Miller said that defense counsel never spoke to him. None of the other officers said that anyone from the defense team had spoken to him. Didn't the state court make a finding of facts that he did? That Miller spoke with him? I think it was possible that Miller's investigator had spoken with him. Yes, that the investigator spoke. Yes. Even given that, Your Honor, this was counsel's key witness at trial, and he did almost nothing to investigate, to prepare for that claim, knowing that he was going to hinge the entire accidental discharge defense on what he assumed Miller would say. And that's exactly how he described it. He said he assumed, he presumed Miller would testify consistent with his earlier statements. The Strickland requires him to perform a reasonable investigation, and that involves, under these circumstances, a reasonable lawyer should have spoken to the other officers. It should have done more to shore up that testimony since he was hinging the entire defense on the fact that Miller would say that his finger wasn't on the trigger when he shot himself in the foot. All right. Judge Guy, Judge Murphy, do you have any further questions? We'll hear from Mr. Bledsoe. Thank you, Your Honor. May it please the court. John Bledsoe on behalf of the respondent. I hope everyone can hear me well. This is a new experience for me. Returning, taking the claims in turn, the first claim regarding ineffective assistance in failing to investigate and find an investigator comparable to someone who could provide testimony comparable to what Mr. Belk ultimately testified to. I think there are really two important points that weigh into this. One is, any question concerning the investigation of counsel prior to trial, you really have to look at what counsel did, what counsel knew, and what was knowable to counsel. It's certainly a legal conclusion for the court as to what counsel's obligated to do, what the Constitution requires, but kind of the universe of knowable facts or knowable information, that's more of a factual issue. And so that is essentially my response to the question posed earlier by Judge Murphy. I don't think the standard is any different, but you look at counsel in 1994, what was readily available to him, and you apply it to the facts of the case. What counsel reasonably expects to be presented in that trial, based upon his investigation of the proof, and what he knew going into trial, is this was a case that the state would largely look to eyewitness testimony and direct evidence, not expert opinion proof, to establish his guilt. The only question of expert proof at issue on this particular point is the expert opinion ultimately offered by Mr. Fyke on the firearm. But even there, his opinion was based upon his testing of that weapon. He was not opining about any other Remington rifle other than the one he tested. And he prepared a report, it was short, one page, but he prepared a report showing that he tested it, he attempted to make it accidentally discharged, he was not able to do so. Can I ask a question, I guess? So, strategic decisions that are made after complete investigation, the court has repeatedly said are essentially immune from inquiry almost. But it's not clear to me, he knew that this expert was going to testify before trial, but it's not clear to me that he did much of anything to see if he could even obtain any type of expert testimony. I recognize that there were many more constraints that he faced in the 1990s than we have now, like there was no Google. But I assume that there was some criminal defense community on when experts are required, how you go about getting experts. Is there any evidence that he did anything or did he just immediately conclude that I'm just going to rely on the Miller incident? Well, he did, one thing he did is he attempted in the cross-examination of fight to ask him about other Remingtons. So apparently he had some type of investigation to prepare to cross-examine that really wasn't fleshed out in the post-conviction, so we don't really know kind of what specifically. But we know, and I think this is what's more important, is he made a strategic decision based upon his review of this evidence. Now, that strategic decision might be deficient when you have a case that rises and falls on expert testimony. Something akin to Hinton were the only proof to show, but here the state is not presenting and relying on this expert proof, but the state is presenting the expert proof to show that this weapon could only discharge by firing it, because that was ultimately his opinion. But that was to respond to a claim of an accidental shooting because the state knew this very rifle had discharged. Ordinarily in a first degree murder case, the state's not going to put forward proof to show a gun can't accidentally discharge if there's no real question about that. If anything, it's to respond to the defense, what they expected the defense to be. So again, you take it in that factual context and counsel, and he was very clear. He referred to that as a gem. Once he learned that Miller said, and there was some, there was sort of a haphazard way how that fact, those facts came out, which I can explain, but ultimately he knew, he believed, and it was a reasonable strategic decision, I would submit, certainly a fair-minded jurist could make that conclusion, that that gem, that's the word he used, would trump any battle of experts about a design defect. And particularly where here, I mean, you have the issues about could he have even found this type of evidence, but the claim is a very, not just he didn't consult with an expert, but he didn't find particular evidence regarding this common trigger that even the proof presented in the post-conviction, that person had not even at that time talked to. So you weigh all of that together. Counsel, in every case, is having to make decisions as to how, you know, how to develop their defense, what they need to look at. In this case specifically, he reviewed the statements. He spoke with the daughter of the victim, who was four years old at the time, that the state anticipated calling and did call. He was able to question her. He believed that he could cross-examine and undercut the credibility of any proof elicited through the state's direct examination. And we have that in the record, where he did thoroughly cross-examine that witness. How would you respond to our, I think our decision is called Sturmer, the recent Sturmer decision from 2020, that the appellant relies on quite a bit that found ineffective assistance, or at least suggested there would be ineffective assistance when there was no inquiry into a fire, an arson expert. Right, right, Your Honor. Setting aside, you know, we've raised the argument that that was dicta. If anything, it may be persuasive, and it's not. And I apologize. I don't recall the precise facts, but I realize that was an arson that necessarily turned, at least the statement of the court, on expert proof to establish whether it was or was not an arson. I mean, it's a very specific, whether this fire was, in fact, an arson. I would just submit that's distinct from here, where the state is relying on direct evidence from lay witnesses to establish guilt, to establish the premeditation, how he brought the gun to the location, he asked the victim to come outside. It's, the use of a gun expert was to respond to a defense where counsel already had what he reasonably believed, and I think that's accurate. Of course, the question for this court is would a, could a fair-minded jurist reach that same conclusion? But arguably that, I mean, the counsel in that case made the same choice. The choice was between disputing whether it was, in fact, arson or trying to shift blame to the arson to the husband. And so counsel had the argument that the husband had did it because there was, I think, some evidence about the husband potentially attempting arson in other ways or something. So I guess there was a choice that was made there that defense counsel was just going to rely on the shift blame descent defense rather than there was no arson defense. And so you could make the analogy that that's kind of what counsel did here by relying on Miller rather than an expert. Right. I mean, all of these obviously rise and fall on very particular facts and distilling on collateral review, determining what precisely was not only what was available, but what we expect under the Constitution counsel to find. When counsel has very direct lay evidence that he reasonably expects will come in and does ultimately, I mean, he has problems with Officer Miller's testimony. He was an accidental shooting of him. I think the record, the trial record, trial proof fully establishes ultimately. But when you have that, the question then, does the Constitution require you to find an obscure expert to create a battle of experts where you have great familiarity with guns and you've heard nothing about problems with this particular trigger mechanism? It's kind of a way you weigh all that. And of course, the state court did that in its review and ultimately applied the strong deference that Strickland provides, that strategic decisions are generally unchallengeable when you have a fair weighing of the available evidence. And I submit the record supports that. He considered everything available to him and made a strategic choice regarding the on that issue. I have none. And regarding the second, I would submit it to the court to briefs unless the court has any questions on that one. Judge Murphy, Judge Guy, questions? All right. We will then hear rebuttal. Thank you, Your Honor. Just a couple points. Again, this was a one defense case, accidental discharge. Counsel knew this from the very beginning. He knew it was the only defense. He knew about Fite's testimony. And at that point, Hinton says he had one reasonable and available strategy, and that was to hire an expert. Fite's testimony was a critical part of the state's case. We have here our Officer Miller's extraordinary incident where you have a 22-year-old veteran who is used to handling firearms and the gun discharges into his foot. And so showing that Kendrick's gun was not able to discharge the way that Kendrick said it did and the way that it had for Officer Miller was an important part of the prosecution's case in chief. Fite's testimony runs almost 40 pages. So that was a core piece of this trial. And when counsel was preparing his defense, he should have seen any reasonable lawyer, any constitutionally effective lawyer would have seen that there was one defense available, and that was to hire a firearms expert. Even in Hinton, the defense counsel employed other strategies to try to get around the expert evidence that linked the defendant to the gun. He had alibi witnesses. He had people who could testify that the defendant wasn't there during the robberies. The Supreme Court in Hinton said that's not enough. This is the kind of case that needs an expert. This is also the kind of case that needs an expert. Officer Miller's incident was a critical piece of evidence, but it wasn't enough, especially in light of Mr. Fite's testimony. Can I ask you briefly about the response about Sturmer and whether it was dicta? It did strike me as dicta because the entire section began about there was some procedural issues in the state habeas and therefore we're not going to resolve this claim. But if we did resolve the claim, this is how we would resolve it. Doesn't that strike you as dicta? Certainly, the court in Sturmer granted habeas relief on other grounds, but Sturmer went well out of its way to explain why an expert was required in that case and why the Supreme Court's precedent in Hinton and in Richter demanded that counsel had hired an expert. To that extent, it's a persuasive explanation by this court of the cases that ultimately matter under this standard, which are the Supreme Court's cases. So, you know, Hinton is persuasive, but ultimately Hinton controls the outcome here and says this is a case where you need to have an expert. Counsel didn't get an expert and Hendrick's defense was prejudiced. I see my time is out. We therefore ask this court to grant the writ of habeas. I have a question. I just wanted to make the point that interestingly enough in this case, up to this point in this argument, no one has even mentioned a depa and that our review of a Strickland decision is described as doubly differential. And it seems to me you're asking us to apply almost an absolute standard. I don't see much differential in there, much less doubly differential. Of course, it imposes a very high standard. This case meets it. Supreme Court precedent in Hinton, in Richter, Strickland dictates that this was the kind of case that required expert testimony. The Tennessee Court of Criminal Appeals, which had initially granted Hendrick relief, had it right when it said that this, the question of a firearms expert was absolutely crucial and was the key question in Hendrick's case. The Tennessee Supreme Court was unreasonable when it reversed that decision. All right. Thank you both for your arguments. We will consider them carefully. Case is submitted.